Good morning, Your Honors. Marla Zink on behalf of Cindi Allison. I'm going to try and reserve three minutes for rebuttal, please. So this appeal focuses on the deprivation of Allison's defense through the denial of jury instructions and through prosecutorial misconduct. The briefing covers all the bases including cumulative error. However, this morning I'd like to focus on the denial of the duress instruction and briefly touch on the prosecutor's misconduct. So Allison was entitled to an instruction on the defense of duress because she presented a prima facie case on all three elements of duress. And I will talk about the evidence that supports each element, but it's important to also think about the framework that we're in here. Allison has a Sixth Amendment right to present her defense and the defense instruction should be provided as long as there's some evidence supporting it. No one argues here that there isn't a basis in the law for it. And we take the evidence in the light most favorable to Allison and the evidence can be weak or it can be inconsistent or it can be even of doubtful credibility. Those are issues for the jury to decide, not for the trial court or the reviewing court. So turning to the evidence, we have really dozens of pieces of contemporaneous evidence here from multiple witnesses that support the elements. So the first element is an impending or immediate threat of serious injury. And while there are eight pieces of evidence I can talk about here today, really only two of them are necessary to support this element. And that's the bodily injury that Allison had sustained and the email at Exhibit 73 ER 151. So the email is from Allison to Jane Nichols and in that email she discusses that she was threatened, that she was blackmailed by Moore, by the individual for which duress is claimed, that this was a continuous threat throughout four years and that she wanted to quit but she was scared and emotionally exhausted. So that email really primarily lays out the elements of duress, but understandably it doesn't talk about specifically and explicitly a bodily injury. However, we know that Allison's testimony showed that Allison had been strangled, attempted strangling at least, by Moore. She had handprints around her neck. That at least leads to an inference of bodily injury. But there's more because we also know that her son received a bloody lip at the And we know that Moore was controlling and abusive to Allison and her kids. We know that Allison called her ex-husband to the house at least 10 times over the course of a period to deal with Moore. We know that Allison also told Jane Nichols that she needed help and needed protection from Moore and Nichols offered to fly her up to Seattle while Allison was in Texas to remove her from the situation. We also know that Moore benefited from the fraud, which leads an inference that he had a hand in it. And we know that Allison's ex-husband testified that Moore had the capacity to force Allison or to impose duress on her to commit this offense. So those pieces of evidence all go to the impending threat of serious injury. The second element is a well-grounded fear that that threat will be carried out and there's at least three bases for that. Moore had prior convictions for manslaughter and terroristic threats. He was also controlling and abusive to Allison and had sustained physical injuries on both her and her son, as I discussed. And we also know that he abused alcohol, steroids and prescription medications and he was known to regularly be using steroids that could induce more rage. And third, we know that there was a lack of a reasonable opportunity for Allison to escape. As I said in the email, she discussed how she was continuously under the threat, but she also was living with Moore and there was testimony that he was constantly around her, that neither she nor her children were really able to even get out of the house. Her son sustained a bloody nose in just trying to leave the home. She was able to call her ex-husband to come over? And nothing changed from that. So she did. She was able to call the police, right? And nothing changed from that. And she did call the police. So that was my second point. She called the police on at least 20 occasions. Did she tell the police that she was being threatened to commit fire fraud? We don't know that. We don't have that evidence, but we don't need that evidence because... Did anybody present, any of the agents testify to that? The agents testified that she, that Allison told them that she was blackmailed. And we know that there was evidence that she, the police weren't a point of safety. They came to the house, the courier was called at least 20 times. So I think this is the element that you might have the most difficulty with, because it doesn't just take, this covers about a four-year period of time. Correct? And as I understand it, Moore wasn't there all the time. So he was in the house. Was working, though, right? He was in the house and it was, the testimony was that he rarely left and that it was hard for Allison to even find time to work without him around. I thought her husband testified that at times he was working. At times he was, but I said rarely. And there, the evidence, so this is, the court doesn't need to weigh inconsistent evidence here to the extent there's even inconsistent evidence. But this is where in Allison's email, she says she was continuously under the threat. Right? And then we have other evidence that supports that as well, which is that there was, there was no one who would help her. And the police were called on several occasions and wouldn't leave. That makes it very different than Moreno or Vasquez. We don't know what she told the police or do we? We don't. But I don't think Allison had that burden. Now, the jury could choose to disbelieve the defense. But the point is that the jury didn't get it. Is duress an affirmative defense? Yes. So that's why she. The burden. She had the burden. To present some evidence. Of production. Correct. In order to get the instruction. The government didn't need to negate it. Not without the instruction. Correct. As part of its affirmative case. Correct. It doesn't, it doesn't actually go to any of the elements. It's a separate defense. Right. Which is why without the instruction, the jury had no basis to acquit her. Now, these can all be jury questions as to whether there's sufficient evidence or whether the evidence is consistent or whether it's believable. But the evidence was there to establish a prima facie case. We also know that when Allison, when that Allison confessed this and she confessed it consistently starting in 2015. And that makes it unlike Moreno, who was kicking the officer and tried to run away from him when he was first subjected to inquiry about the offense. And we also know that that makes it more like content of passion, which in that case, the individual submitted to a stomach X-ray and started to cooperate upon being caught. The case law does not require that an individual immediately cease the activity. It requires that once there is a point of safety that the individual confess or cooperate. And that, and Allison did that here, especially on a prima facie case. And if I can briefly touch on the prosecutorial misconduct, I would just say, especially on the second instance, the emotional appeal to the jury, it was entirely irrelevant to this case whether More received justice, whether the prosecutor believed More deserved justice, and whether the prosecutor prayed for More's justice. And that imbuing of emotion into this case prejudiced Allison in addition to the other count of prosecutorial misconduct. And I'll reserve the remainder. Thank you. Thank you. So we will hear from the government now. Good morning, Your Honors, and may it please the Court. I'm Teal Miller on behalf of the United States. I'll get right to the points on duress. More, Allison told Jane Nichols that More moved out of her house in August of 2014. The charged offenses here began in June of 2014, but lasted until March of 2015. So Allison simply didn't establish a prima facie case of duress because duress requires an immediate threat. And here, there's some general evidence of threat and domestic abuse, but nothing ties a criminal act being done in response to an immediate threat. And More is by... Now, where's that evidence in the record? It's at SER 26. This evidence is coming from which witness? It comes from Allison in a text to More. Excuse me. It comes from Allison in a text to Nichols and was introduced by the government. Okay. And in there, she says that More moved out, but I thought he moved back in. She says he was finally gone in 2014, in August of 2014. This is at SER 26. And what is the time period for the... So it was a sustained period of about four years of fraud, but the charges go from June of 2014 to March of 2015, the six counts of wire fraud that were charged here. And I think if you look at Vasquez-Levander, this court's decision in Vasquez-Levander, it's abundantly clear that you have to have an immediate threat and there can't be time for it to dissipate and it has to be tied to the criminal act. If you look at Contento-Pacheco, which Ms. Zink referred to, there, the defendant was in Colombia and the court was very clear that he was under duress for every moment until he confessed. And it contrasts the case where the defendant had 53 days and says, you know, it's very hard to establish duress when you're talking about that kind of a sustained period of criminal activity, which is what we have here. I also think that the evidence shows that there was an opportunity to escape here and in particular, Nichols offered to fly Allison to Seattle to get out from under the floor. Let me ask you one question, please, if I can, to clarify in my mind. Did the judge exclude any evidence on the duress issue? No, the judge did not. It's simply a situation where the judge let all the evidence offered, come in and then decided there wasn't enough to give the instruction. That's right. That's exactly right, Your Honor. And I think there are two points that are really telling on that accord. The prosecutor actually said, you're allowing this evidence in from Allison's ex-husband, that's essentially nullification. And the court said, I'm just going to let it in. And the other key point is, you know, she didn't offer, she didn't proffer a duress defense. Her trial brief didn't suggest she would have a duress defense. The government actually offered a duress instruction out of an abundance of caution partway through the trial once the court ruled that Mr. Allison could testify and then withdrew it once it rested on the ground that there simply wasn't a prima facie case of duress here. And Allison said, well, we'll offer it then, but didn't make an argument that it was a duress defense. She rejected it. But during, let's see, during the argument, when defense counsel argued, he did raise the duress defense. In his closing, he was effectively making a duress argument. That's right. And the court let him go on. And the court let him do it. That's right. But yet there was no instruction. So what was that all about? I think, I mean, I think it was effectively a nullification argument. She was, she said repeatedly, or counsel said repeatedly, she shouldn't be left holding the bag for this. Moore was abusive, and he was coercing her and threatening her, which, of course, the complained-about statements in our rebuttal were a direct response to that and were allowable under Young for that reason. I'd be happy to address the prosecutorial misconduct argument if the Court has concerns about it. Yes. So there are two complained-about statements. We believe that both of them are reviewed for plain error because there was no contemporaneous objection lodged. And the first statement is the statement they were he objected. I think it was right after closing arguments were finished. It wasn't right after closing arguments were finished. It was after the jury had retired. Well, I mean, how much time elapsed? Well, Rule 51 requires a contemporaneous objection, so there can be a cure. Here, if he had said. The judge could have brought the jury back in and given him some admonishments. On the other hand, if he had stood up during the argument, the judge could have given the prosecutor a chance to correct the statement. But it looked like the defense counsel didn't want to, you know, highlight that particular issue. Well, I do think it's worth noting. I don't see any problem with that. It seems like it's regular review. Okay. Well, even if that's true, the conviction should be affirmed because there was no prejudice here for a couple of different reasons. First, at page 805 of the record, you'll see that the prosecutor, in his rebuttal, said, we have the burden, she has no burden. So this is a case quite like other cases where this court has said, when the prosecutor doesn't, you know, affirmatively says, we have the burden and we're not shifting it, that counts in terms of assessing prejudice and it counts in favor of the argument. And then, as I said, under Young. What's the reference about credibility? What was his reference about credibility all about? It was a response to. What was that meant to? What was he trying to highlight? He was trying to highlight that all of the evidence that Moore was coerced, or most of the evidence that Moore was coerced, that Allison, sorry, that Allison was coerced, that Allison was depending on, came from Allison. And in particular, in defense counsel's closing argument, and this is at page, well, in defense counsel's closing argument, over the course of several pages, he goes through why the jury should accept the view that Moore was coercing Allison and forced her to do this. And the prosecutor was responding to that at pages 809 through 810 when he made this comment. And what he was saying is, look, yes, one of the things defense counsel highlighted was that agent spies said there was some element of domestic violence. And what the prosecutor was saying is, but agent spies was quick to say that all of that evidence came from Allison herself, the evidence that the agent was referring to. And if you look at page, if you look at the email at page 151 of the record, it is abundantly true that she complained that he was coercive, but she did not complain that he was violent. And so the prosecutor was merely responding to it and saying, you have to look at what it actually says, and then you have to consider the source. And the source is someone who confessed to this crime twice. And I think, ultimately, this is an easy case, even on harmless error review, because we have two confessions, neither of which pointed to Moore. When Allison confessed to Nichols, she did not say, I did this because I was the victim of domestic abuse. She said, I did it because he was manipulating me and coercing me. But she didn't say she did it because she was the victim of domestic abuse. And when she was ‑‑ Well, coercion, he could be threatening her. But she didn't ‑‑ she said he was threatening to expose her criminal conduct. She had been misusing government benefits. And, of course, that's not an excuse. If you put yourself in a position of being vulnerable to coercion because you're committing fraud, that doesn't excuse further fraud. And then she confessed to the Secret Service agent, and she said, I was having a difficult time financially. She did not point to Moore at all in her confession to the Secret Service agent. And for that reason, the judgment should be affirmed even on harmless error review. Okay. If the Court has no further questions? I have none. We ask that the judgment be affirmed. Thank you. I think the prosecutor's argument here makes clear what was also part of the problem at trial, which was that not only did Allison not have an instruction to provide the jury with a legal basis for which to acquit her, which is not nearly the same as the possibility of arguing for jury nullification, and in Marguerite Pallado, this Court recognized so much, and evidence was presented in that case as well, but an instruction on the defense was denied and reversal was required. So the admission of the evidence isn't sufficient without an instruction. But not only that, the government tried to take advantage of the admission of the evidence and insert its own opinion on credibility and shift the burden. Notably, the prosecutor now tries to rely on an argument from five pages earlier that correctly stated the burden, but it was five pages later that the prosecutor made this improper argument. So what about the government's point just a moment ago that Moore moved down, that Allison mentioned to Nichols that Moore had finally moved down? Right, but Allison also mentioned to Nichols that this threat had been continuous over the course of four years, and we know that it was a serious domestic violence situation at the very least. The jury can sort out – So were any of the charges subsequent to the date or the time period in which Moore allegedly moved out? That's correct, but I think that in a domestic violence situation, stopping at the moment that the individual is no longer in the house is not necessarily the proper basis for when there's a reasonable opportunity to escape. But even if Allison had a reasonable opportunity to escape, which we in no means concede, that if the police weren't a point of safety for her, which they had repeatedly not been – I have to go back and look at the record a little bit more closely, but if there was evidence that he moved out, why didn't she have a reasonable opportunity to then go to the police and say this is what happened? Well, the police weren't helpful throughout the course of this, so the police were never an option. We don't know what she was representing to them. And we have to look at the evidence in the light most favorable to her for her to have the instruction. So these could all be questions for the jury, but we don't know that the controlling and abusive behavior stopped the moment he moved out. In domestic violence situations, that's often not true. She didn't say that we have no contact. In fact, she said, I've been continuously under this threat. That should be enough for the instruction to go to the jury and support the evidence. And as we argued in the briefing, cumulative error also supports reversal here. We ask that the court reverse. Thank you. Thank you very much. I thank both counsel for their excellent arguments. And Allison, the Allison case is now submitted.
judges: Gould, Paez, Pregerson